

Christopher J. Gray, P.C.

One Grand Central Place
60 East 42nd Street, 46th Floor
New York, NY 10165
212.838.3221 VOICE
212.937.3139 FACSIMILE

G

May 21, 2026

**VIA ECF**

Hon. Philip M. Halpern, U.S.D.J.
United States District Court, Southern District of New York
300 Quarropas Street, White Plains, NY 10601

Re:     *Cori-Schubert De Cori v. HASelect-Waterford LLC, et al.*, No. 7:26-cv-01513 (PMH)

Dear Judge Halpern:

Plaintiff respectfully submits this Rule 2(C) opposition to Marcum LLP's ("Marcum")
May 19, 2026 pre-motion letter (ECF 16). Plaintiff does not concur with any of Marcum's three
asserted grounds and will defend the Complaint as filed.

I.      **EACH CLAIM AGAINST MARCUM IS TIMELY.**

A.      **Count V is governed by CPLR § 213(8) — every Marcum opinion is within the
limitations window.** Aiding-and-abetting fraud is subject to the greater of six years from accrual
or two years from discovery. CPLR §§ 213(8), 203(g); *Sargiss v. Magarelli*, 12 N.Y.3d 527,
532(2009); *Kaufman v. Cohen*, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157 (1st Dep't 2003). All
Marcum opinions for FY 2019 through FY 2023 issued between 2020 and 2024 (Complaint ("¶")
¶¶ 27, 80, 110), within six years of the February 23, 2026 filing.  The Complaint alleges that the

1

fraud was not discoverable until 2024–2025 (¶¶ 179–183, 245) meaning Plaintiff asserted Count V within two years of discovery.

**B.    Count IV is timely under CPLR § 214(6) as to Marcum's FY 2022 and FY 2023 audit opinions.** Accountant-malpractice claims accrue on receipt of the work product. *Williamson v. PricewaterhouseCoopers LLP*, 9 N.Y.3d 1, 8 (2007); *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 541 (1994). Marcum's FY 2022 opinion issued April 5, 2023 (Compl. ¶ 110); its FY 2023 opinion issued in 2024. (¶¶ 27, 60). Both opinions issued within three years of filing. Marcum's contention that the FY 2020 audit was "the last audit report Plaintiff could have relied on" ignores the Complaint's post-2021 damages allegations entirely: Marcum's continued audit opinions ratified the inflated NAV, supported ongoing fee extraction that diluted Plaintiff's remaining interest, and concealed the cause of action. (¶¶ 187–190, 263).

**C.    Equitable estoppel and CPLR § 205(a) reach the earlier audit years.** A defendant is estopped where the plaintiff "was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Simcuski v. Saeli*, 44 N.Y.2d 442, 448–49 (1978); *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006) (requires "subsequent and specific actions" inducing delay); *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491 (2007). Marcum issued seven successive unqualified audit opinions, each addressed "to the Members of HASelect-Waterford LLC," each ratifying the inflated NAV (¶¶ 134, 250). These affirmative reaffirmations of false information constitute the "subsequent and specific actions" *Zumpano* requires. Marcum's citation to *Cusimano v. Schnurr*, 137 A.D.3d 527, 27 N.Y.S.3d 135, 140–41 (1st Dep't 2016), confirms the same standard. Here, Marcum undertook additional steps beyond failing to disclose — including repeated affirmative misrepresentations that easily satisfy *Zumpano* and *Cusimano*.

2

**D.    Illinois RID status is party status.** The Cook County action separately tolls limitations under CPLR § 205(a). Marcum was named as a respondent in discovery ("RID") under 735 ILCS 5/2-402 (¶ 173) — a "hybrid litigant" status that the Illinois courts treat as a party for jurisdictional purposes. Once an RID is served with summons, "the court acquires *in personam* jurisdiction over that party for all purposes." *Coyne v. OSF Healthcare Sys.*, 332 Ill. App. 3d 717, 719 (3d Dist. 2002). The statute requires RIDs to "respond to discovery by the plaintiff in the same manner as are defendants," 735 ILCS 5/2-402 — which Marcum did, producing documents without objection. (¶¶ 173–75). The RID procedure is a "special statutory action" within the Illinois Code of Civil Procedure. *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1024 (2d Dist. 2009).[1]

Marcum's *Town of Greenburgh* and *Moskowitz*[2] are attorney-malpractice cases inapposite to the framework discussed in *White v. Guarente,* in which a group of known limited partners relied upon the audit reports. *See* 43 N.Y.2d 356 (1977). *Williamson* reaches only the earliest audit years, which are not time barred as discussed in Secs. I.A–C above. *See* 9 N.Y.3d 1 (2008).

## II.    THE MALPRACTICE CLAIM SATISFIES NEAR-PRIVITY AND OTHERWISE SURVIVES.

Each *Credit Alliance* prong is pleaded. *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 553 (1985), amended, 66 N.Y.2d 812 (1985); *Prudential Ins. Co. v. Dewey, Ballantine*, 80 N.Y.2d 377, 384 (1992); *Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co.*, 79 N.Y.2d 695, 706 (1992). The audit was required to satisfy SEC Custody Rule 206(4)-2, which

---

[1] Marcum's *Raji v. SG Americas Sec., LLC* case involved a complete nonparty to the previous action that the complaint therein "fail[ed] to even mention." *See* 133 N.Y.S.3d 789, 790 (1st Dep't 2020). CPLR § 205(a)'s "broad and liberal purpose is not to be frittered away by any narrow construction" that would deny the statute's remedy where the defendant indisputably had timely notice. *See Malay v. City of Syracuse*, 25 N.Y.3d 323, 327 (2015).

[2] 2010 WL 11712813, at *5-8 (S.D.N.Y., 2010); *Moskowitz v. Fischer*, 2022 WL 1483958, at *3-5 (Sup. Ct. Suffolk Cty. May 03, 2022).

exists to protect investors (¶¶ 131, 253); each opinion was addressed "to the Members of HASelect-Waterford LLC" (¶¶ 134, 250); and Marcum annually received investor lists, capital-account statements, and K-1 data for the approximately 150–200 members. (¶¶ 132, 251). *White v. Guarente*, 43 N.Y.2d at 361, squarely controls. Marcum's own *SIPC v. BDO Seidman, LLP* confirms it: the United States Court of Appeals for the Second Circuit distinguished *White* because "the complaint does not allege that Seidman ever knew those investors' identities." *See* 222 F.3d 63, 76 (2d Cir. 2000). Marcum's *Parrott v. Coopers & Lybrand* is likewise inapposite: it failed because the accountant was "not specifically made aware" of plaintiff's reliance and the plaintiff "never read or received" the report. 95 N.Y.2d 479, 484 (2000); *Cf., Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 270 (2010) (recognizing fund-investor fraud-in-inducement damages framework). Whether Marcum's combined investor-directed conduct (¶¶ 250, 252, 254) satisfies the third *Credit Alliance* factor is a fact-bound question unsuited to Rule 12(b)(6). 65 N.Y.2d 536 (1985).

Gross negligence is independently alleged and obviates the privity inquiry. *See State St. Trust Co. v. Ernst*, 278 N.Y. 104, 112 (1938). The Complaint pleads Marcum's receipt of L&E disclaimers, higher independent NPVs with no investigation under AU-C 620.19, and zero substantive testing of the most material audit area (¶¶ 62–64, 88–90, 93–98, 101). Plaintiff pleads out-of-pocket damages (¶¶ 18, 187–190), not solely a holder claim.

### III.    THE AIDING-AND-ABETTING CLAIM IS ADEQUATELY PLED UNDER TWOMBLY/IQBAL.

Federal pleading requires factual content that allows the court to draw a reasonable inference of the defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On an aiding-and-abetting fraud claim, "actual knowledge 'need only be pleaded generally,'" *Bullen v. CohnReznick, LLP,* 194 A.D.3d 637, 638, 150 N.Y.S.3d 53 (1st Dep't 2021) (quoting *Oster v.*

*Kirschner*, 77 A.D.3d 51, 55, 905 N.Y.S.2d 69 (1st Dep't 2010)); and at the pleading stage "the plaintiff need not be able to make an evidentiary showing of exactly what the accountant knew as to falsehoods in the certified financial statements," *Bullen,* 194 A.D.3d at 637 (quoting *Houbigant, Inc. v. Deloitte & Touche*, 303 A.D.2d 92, 97, 752 N.Y.S.2d 493 (1st Dep't 2003)).[3]

The Complaint pleads both red flags and GAAP/GAAS violations: the L&E disclaimers (Compl. ¶¶ 87–91, 267, 272); Marcum's own higher NPV calculations with no investigation under AU-C 620.19 (¶¶ 101, 273); audit access to acquisition prices implying 15–18%+ discount rates against management's 10–12% (¶¶ 268, 274); SEC findings of systemic Marcum audit-quality failures (¶¶ 121–124, 275); parallel auditing of six Griffin funds with the same pattern (¶¶ 81, 276); GAAP ASC 820 violations (¶¶ 82, 258); and Marcum's simultaneous July 2025 resignation from every Griffin engagement (¶¶ 164, 277). Substantial assistance follows from Marcum's unqualified opinions, which enabled the fraud and prevented investor discovery (¶¶ 270, 278). Marcum cannot controvert the well pled allegations via a 12(b)(6) Motion and instead should answer and articulate these arguments at summary judgment.

**The Court should deny Marcum leave to file the motion; discovery should not be stayed.** Marcum's three grounds are, at best, fact-intensive summary-judgment issues to be tested on a developed record after discovery — not under Rule 12(b)(6) on this detailed 57-page pleading. Discovery will be needed regardless of Marcum's motion. The Court should permit discovery to proceed without stay, or alternatively, construe the pre-motion exchange as the motion under Rule 2(C) and deny it on the present record.

---

[3] *Bullen* is on all fours. The First Department there sustained an aiding-and-abetting fraud claim against a fund auditor where the auditor's receipt of prior-auditor warnings and multi-year engagement supported an inference that the auditor "willingly turned a blind eye to evidence" of fraudulent valuations. *Id.* (quoting *AIG Fin. Prods. Corp. v. ICP Asset Mgt., LLC*, 108 A.D.3d 444, 446, 969 N.Y.S.2d 449 (1st Dep't 2013)). And "[a]llegations of 'red flags,' when coupled with allegations of GAAP and GAAS violations, are sufficient to support a strong inference of scienter." *Bullen*.

Respectfully submitted,

CHRISTOPHER J. GRAY

Copy:  All Counsel of Record
        (Via ECF Only)