**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CORI-SCHUBERT DE CORI, TRUSTEE OF THE CORI-SCHUBERT DE CORI REVOCABLE TRUST, individually and on behalf of all others similarly situated, | : | Case No.: 7:26-cv-01513-PMH |
| Plaintiff, | : | |
| v. | : | |
| HASELECT-WATERFORD LLC, GRIFFIN CAPITAL MANAGEMENT LLC, GRIFFIN ASSET MANAGEMENT LLC, MICHAEL GRIFFIN, and MARCUM LLP, | : | |
| Defendants. | : | |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARCUM LLP'S MOTION TO DISMISS

DECHERT LLP
Gregory G. Ballard
Priyadarshini Das
1095 Avenue of the Americas
New York, New York 10036
+1 (212) 698-3540
greg.ballard@dechert.com
priyadarshini.das@dechert.com

Attorneys for Defendant Marcum LLP

Dated: July 20, 2026

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 1

A. The relevant parties ..... 1

B. The audit engagement agreements between Waterford and Marcum ..... 2

C. Marcum's audits ..... 2

D. The suspension of redemptions and wind-down of Waterford ..... 3

E. The Cook County Action ..... 3

F. The complaint in this action ..... 4

ARGUMENT ..... 4

I. THE MALPRACTICE CLAIM FAILS FOR LACK OF PRIVITY. ..... 5

II. THE ALTERNATIVE GROSS NEGLIGENCE CLAIM FAILS FOR LACK OF SCIENTER. ..... 10

III. THE AIDING AND ABETTING CLAIM FAILS FOR LACK OF ACTUAL KNOWLEDGE AND SUBSTANTIAL ASSISTANCE. ..... 12

A. The aiding and abetting claim is duplicative. ..... 12

B. Plaintiff fails to plead actual knowledge. ..... 13

C. Plaintiff fails to plead substantial assistance. ..... 14

IV. THE CLAIMS ARE TIME-BARRED. ..... 15

A. The malpractice claim is time-barred. ..... 15

B. The aiding and abetting claim is also time-barred. ..... 16

C. New York's savings statute does not apply. ..... 16

D. The continuous representation doctrine does not apply. ..... 17

E. Equitable estoppel does not apply. ..... 18

V. DISMISSAL SHOULD BE WITH PREJUDICE. ..... 19

CONCLUSION ..... 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 4

*Caplan v. Winslett*,
218 A.D.2d 148 (1st Dep't 1996) ... 17

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014) ... 1

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
65 N.Y.2d 536 (1995) ... *passim*

*CRT Invs., Ltd. v. BDO Seidman, LLP*,
85 A.D.3d 470 (1st Dep't 2011) ... 8

*CRT Invs., Ltd. v. Merkin*,
918 N.Y.S.2d 397, 2010 WL 4340433 (Sup. Ct. N.Y. Cnty. May 5, 2010), *aff'd sub nom. CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470 (1st Dep't 2011) ... 1, 8, 10, 13, 14

*Cusimano v. Schnurr*,
137 A.D.3d 527 (1st Dep't 2016) ... 19

*Equitable Life Assurance Soc'y. v. Alexander Grant & Co.*,
627 F. Supp. 1023 (S.D.N.Y. 1985) ... 10

*Global Minerals & Metals Corp. v. Holme*,
35 A.D.3d 93 (1st Dep't 2006) ... 13

*Gysan v. Francisko*,
2017 WL 5294311 (N.D.Ill. 2017) ... 17

*Holtkamp v. Parklex Assocs.*,
926 N.Y.S.2d 344, 2011 WL 621122 (Sup. Ct. Kings Cnty. Feb. 22, 2011), *aff'd*, 94 A.D.3d 819 (2012) ... 12

*Hudson v. Delta Kew Holding Corp.*,
2014 WL 1924324 (N.Y. Sup. Ct., Suffolk Co., April 22, 2014) ... 16

*Hughley v. Alcaraz*,
494 N.E.2d 706 (Ill. App. Ct. 1986) ... 17

*Kaufman v. Cohen*,
307 A.D.2d 113 (1st Dep't 2003) ....................13, 14

*Klausner v. Annie's, Inc.*,
581 F. Supp. 3d 538 (S.D.N.Y. 2022) (Halpern, J.) ....................4

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
285 A.D.2d 101 (1st Dep't 2001) ....................8, 9

*M&T Bank Corp. v. McGraw Hill Cos., Inc.*,
126 A.D.3d 1414 (4th Dep't 2015)....................6

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
487 F. App'x 636 (2d Cir. 2012) ....................7

*Moskowitz v. Fischer*,
2022 WL 1483958 (Sup. Ct. Suffolk Cnty. May 3, 2022)....................17

*Parrott v. Coopers & Lybrand*,
95 N.Y.2d 479 (2000) ....................5

*Prime Plus Acquisition Corp. v. Eisneramper LLP*,
2015 WL 8490460 (N.Y. Sup. Ct., N.Y. Co., Dec. 10, 2015) ....................8

*Raji v. SG Americas Securities, LLC*,
189 A.D.3d 514 (1st Dep't 2020) ....................17

*RGH Liquidating Tr. v. Deloitte & Touche LLP*,
47 A.D.3d 516 (1st Dep't 2008) ....................15

*Ruffolo v. Oppenheimer & Co.*,
987 F.2d 129 (2d Cir. 1993)....................19

*Sandalwood Debt Fund A, L.P. v. KPMG LLP*,
2013 WL 3284126 (N.J. Super. Ct. App. Div. July 1, 2013)....................8

*Securities Investor Protection Corp. v. BDO Seidman, LLP*,
222 F.3d 63 (2d Cir. 2000) (Sotomayor, C.J.) ....................5, 6, 7

*Simcuski v. Saeli*,
44 N.Y. 2d 442 (1978) ....................18, 19

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)....................10, 11

*Stephenson v. PricewaterhouseCoopers, LLP*,
482 Fed. App'x 618 (2d Cir. 2012).................... 6

*Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562 (S.D.N.Y. 2011)....11

*Sykes v. RFD Third Ave. 1 Assocs., LLC*, 15 N.Y.3d 370 (2010)....6

*Town of Greenburgh v. Spectraserv, Inc.*, 2010 WL 11712813 (S.D.N.Y., 2010)....17

*Williamson v. PricewaterhouseCoopers LLP*, 9 N.Y. 3d 1 (2008)....15, 18

*Zumpano v. Quinn*, 6 N.Y. 3d 666 (2006)....19

**Statutes**

735 Ill. Comp. Stat. 5/2-402 (2026)....17

SEC Investment Advisers Act....6

**Other Authorities**

17 C.F.R. § 275.206(4)-2....6, 9

CPLR § 205....17

CPLR § 214....15, 16

Federal Rules of Civil Procedure 9(b) and 12(b)(6)....1, 10

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Marcum LLP ("Marcum") respectfully submits this memorandum of law in support of its motion to dismiss the complaint ("Compl.") filed against it by plaintiff Cori-Schubert De Cori ("Plaintiff").

## PRELIMINARY STATEMENT

The claims against Marcum should be dismissed for the same reasons the claims against the auditor in the *CRT* litigation were dismissed. *CRT Invs., Ltd. v. Merkin*, 918 N.Y.S.2d 397, 2010 WL 4340433, at *11-15 (Sup. Ct. N.Y. Cnty. May 5, 2010) (negligent misrepresentation dismissed for lack of near-privity; fraud dismissed for lack of scienter; aiding and abetting dismissed for lack of actual knowledge and substantial assistance); *aff'd sub nom. CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470 (1st Dep't 2011). Also, claims based on audit reports prior to February 23, 2023, are barred by the statute of limitations.

## STATEMENT OF FACTS

The relevant allegations of the complaint are summarized below, along with documents referenced in the complaint, which the Court may consider on this motion to dismiss. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014).

### A. The relevant parties

*Plaintiff Cori-Schubert De Cori*. Plaintiff is trustee of a revocable trust that purchased a membership interest in Waterford between 2017 and December 31, 2021. (Compl. ¶¶ 18, 184.)

*HASelect-Waterford LLC*. HASelect-Waterford LLC ("Waterford" or the "Fund") is a life-settlement fund managed by Griffin Capital Management LLC ("GCM"). (Compl. ¶¶ 1, 20, 22, 35.) Griffin Asset Management ("GAM") serves as Waterford's external advisor. (Compl. ¶ 2.) Life settlement funds purchase life insurance policies from insureds who no longer want coverage and attempt to generate investment returns by collecting death benefits when insureds die. (Compl. ¶¶ 31-32.) There are 150 to 200 investors, including Plaintiff, in Waterford. (Compl. ¶ 17.)

*Marcum*. Marcum, organized under the law of and headquartered in New York, is an accounting firm that audited the financial statements of Waterford. (Compl. ¶¶ 10, 26.)

**B. The audit engagement agreements between Waterford and Marcum**

Waterford engaged Marcum to audit its financial statements pursuant to engagement agreements. (Compl. ¶¶ 80, 249.) Copies of the agreements for each year from 2017 through 2022 (each, an "Engagement Agreement," and, together, the "Engagement Agreements") are attached to the accompanying affidavit of Gregory G. Ballard. (Exs. A-F.) Plaintiff was not a party to the Engagement Agreements. The Engagement Agreements provided that Waterford was responsible for preparing its financial statements in accordance with generally accepted accounting principles ("GAAP") and that Marcum was to audit those financial statements in accordance with generally accepted auditing standards ("GAAS"). The Engagement Agreements specified that Marcum's audit was conducting solely for the benefit of Waterford, thereby disallowing reliance by any third party on Marcum's audit reports. (*See, e.g.,* Ex. A at 9.) Each Engagement Agreement called for Marcum to audit the financial statements for a single year and specified that the engagement would end upon delivery of Marcum's audit report. (*See, e.g.,* Ex. A at 7.)

**C. Marcum's audits**

Pursuant to each of the annual Engagement Agreements, Marcum conducted an audit of Waterford's year-end financial statements, which Marcum documented in audit work papers. (Compl. ¶ 45.) Marcum's audit procedures for each audit as reflected in the audit work papers included review of life insurance policies (Compl. ¶ 46), discount rates and policy-by-policy adjustments (Compl. ¶ 56), responses to questionnaires sent to third-parties (Compl. ¶ 62), third-party valuations (Compl. ¶ 63), internal Marcum valuation memos (Compl. ¶ 101), no fewer than 291 management assessments and materiality work sheets including 26 that were Waterford-specific (Compl. ¶ 108), and sensitivity analysis (Compl. ¶ 111).

In each year, upon completion of its audit, Marcum provided Waterford with an audit report. Marcum's audit reports are cited and referenced throughout the complaint. (Compl. ¶¶ 59-60, 73-74, 81, 86, 110, 125-130, 134.) Copies of the audit reports for each of the years from 2017 through 2022 are attached to the accompanying affidavit. (Exs. G-K.)

**D. The suspension of redemptions and wind-down of Waterford**

On September 24, 2021, Waterford management communicated that, due to a large number of redemption requests, investor redemptions were on hold pending review. (Compl. ¶ 152.) Then, on December 28, 2021, Waterford's management suspended all redemptions and commenced the wind-down of the Fund. (Compl. ¶¶ 12, 110, 153.) The Fund has distributed money to investors, but it remains substantially unliquidated. (Compl. ¶¶ 13, 161-162.)

**E. The Cook County Action**

On May 2, 2025, Plaintiff commenced litigation in Illinois against Waterford and other defendants, captioned *Cori-Schubert De Cori Trustee of Cori-Schubert De Cori Revocable Trust v. HA-Select Waterford LLC et al.*, No. 2025CH04936 (Ill. Cir. Ct., Cook Cnty.) (the "Cook County Action"). (Compl. ¶ 172.) Plaintiff did not assert any claim against Marcum in the Cook County Action. Rather, pursuant to Illinois state court procedure, Plaintiff named Marcum as a "respondent in discovery," which allowed Plaintiff to demand that Marcum produce documents. (Compl. ¶ 173.) Marcum produced documents, including its audit work papers, which Plaintiff used in crafting the present complaint, which cites Marcum's work papers throughout. (Compl. ¶¶ 45-47, 56, 62-63, 88-89, 99-108, 138, 174, 273.) The Bates-stamp numbers cited in the complaint indicate that Marcum produced in excess of 35,000 pages. (*See, e.g.,* Compl. ¶ 62.) In January 2026, the Cook County Action was dismissed on forum-related grounds. (Compl. ¶¶ 176-177.)

### F. The complaint in this action

On February 23, 2026, Plaintiff filed the present complaint on behalf of a proposed class of all persons who invested in Waterford from January 1, 2017 to the present (Compl. ¶ 191). Plaintiff alleges that management of Waterford over-valued assets on its financial statements and that Marcum, in auditing those financial statements, did not detect the alleged error. Plaintiff acknowledges that it has been repaid some of the money it invested, and that the process of winding down the Fund and repaying investors is on-going, but Plaintiff suspects that it might not recoup the full amount of its investment. (Compl. ¶¶ 13, 18-19, 21, 161-162.) Based on these allegations, Plaintiff attempts to assert five causes of action against various defendants, including two against Marcum, as follows: (1) Count I, for breach of fiduciary duty, asserted against the managers of Waterford (Compl. ¶¶ 202-217); (2) Count II, for appointment of a receiver/liquidating trustee, which despite a heading referring to "all" defendants does not appear to be asserted against Marcum (Compl. ¶¶ 218-236); (3) Count III, for violation of Illinois securities law, asserted against other defendants (Compl. ¶¶ 237-246); (4) Count IV, for professional malpractice/accounting malpractice, asserted against Marcum (Compl. ¶¶ 247-264); and (5) Count V, for aiding and abetting breach of fiduciary duty, asserted against Marcum (Compl. ¶¶ 265-278). For the reasons discussed below, the Court should dismiss the claims against Marcum.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Well-pleaded allegations and reasonable inferences are taken as true, but not legal conclusions, threadbare recitals of the elements of a cause of action, or mere conclusory statements. *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 546 (S.D.N.Y. 2022) (Halpern, J.).

## I. THE MALPRACTICE CLAIM FAILS FOR LACK OF PRIVITY.

The professional malpractice claim (Count IV), asserted under New York law (Compl. ¶¶ 247-64), fails for lack of privity or near-privity between Plaintiff and Marcum. Under New York law, a non-client may sue an accountant for negligence only if "there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." *Parrott v. Coopers & Lybrand*, 95 N.Y.2d 479, 483 (2000) (quotations omitted). Plaintiff does not allege that it was in actual privity with Marcum. Nor could it. Marcum's engagement agreements were with Waterford, and Plaintiff was not a party to those agreements. (Exs. A-F at 1.)

Nor has Plaintiff adequately alleged near-privity. There are three "prerequisites" for near-privity:

> (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.

*Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 551 (1995). As the Second Circuit has observed, the "New York Court of Appeals has described these three factors as establishing a relationship 'approach[ing] that of privity' between the accountant and the third party claiming negligence." *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 73-74 (2d Cir. 2000) (Sotomayor, C.J.) (citation omitted). To meet these requirements, the benefit to the nonclient must be the "end and aim" of the audit. *Credit Alliance Corp.,* 65 N.Y.2d at 554. Unquestionably, the requirements impose a "heavy burden" on plaintiffs and reflect that New York's "strict limitation on the class of potential plaintiffs represents a policy determination by the New York courts that accountants will not, merely by contracting with a particular client, expose themselves 'to a liability in an indeterminate amount for an indeterminate time to an indeterminate class.'" *Securities Investor Protection Corp.*, 222 F.3d at 73-74.

Plaintiff's attempt to allege near-privity fails, as Plaintiff has not alleged and cannot establish *any* of the three prerequisites. *First*, the "particular purpose" or "end and aim" of Marcum's audit reports was not (and is not alleged to have been) to provide information to Plaintiff for the purpose of making investment decisions. *Credit Alliance*, 65 N.Y.2d at 551. Rather, Waterford's purpose in engaging Marcum to audit its financial statements was, even according to Plaintiff, to satisfy the SEC Investment Advisers Act and the custody rule, 17 C.F.R. § 275.206(4)-2, which require investment advisers who have custody of client assets to maintain them with broker-dealers, banks, or other qualified custodians. (Compl. ¶¶ 131, 253.) *See Securities Investor Protection Corp.*, 222 F.3d at 74-75 (no near-privity where audited financial statements were prepared for filing with the SEC and NASD as required by law, not for purposes of the company's customers).

*Second*, Plaintiff was not a "known" party who was "intended to rely" on Marcum's audit reports for such "particular purpose." *Credit Alliance*, 65 N.Y.2d at 551. Waterford was marketed to hundreds of potential investors, and as Plaintiff admits there were 150 to 200 people who became actual investors in Waterford. (Compl. ¶ 17.) *See, e.g., Securities Investor Protection Corp.*, 222 F.3d at 74-75; *Sykes v. RFD Third Ave. 1 Assocs., LLC*, 15 N.Y.3d 370, 373-74 (2010) ("The words 'known party or parties' in the *Credit Alliance* test mean what they say," and the requirement is not satisfied where the defendant "obviously knew in general that prospective purchasers of apartments would rely on the offering plan," but where "there is no indication that it knew these plaintiffs would be among them"); *M&T Bank Corp. v. McGraw Hill Cos., Inc.*, 126 A.D.3d 1414, 1418 (4th Dep't 2015) ("We reject plaintiff's contention that it was a 'known party' under the *Credit Alliance Corp.* test because of the small number of investors purchasing the Gemstone and Cairn CDOs."); *see also Stephenson v. PricewaterhouseCoopers, LLP,* 482 Fed. App'x 618, 621-

22 (2d Cir. 2012) (summary order). Moreover, Plaintiff and other investors were not even *permitted* to rely on Marcum's audit report. Marcum's engagement agreements state that "this engagement is being undertaken solely for the benefit of" Marcum's audit client. (Ex. A at 9; Ex. B at 10; Ex. C at 10; Ex. D at 11; Ex. E at 12; Ex. F at 12.) In other words, Marcum did not know that Plaintiff would rely; on the contrary, Marcum knew that Plaintiff should *not* be relying on its audit reports.

*Third*, Plaintiff alleges no "linking" conduct between Marcum and Plaintiff. *Credit Alliance*, 65 N.Y.2d at 551. To demonstrate linking conduct, a plaintiff generally must show "some form of direct contact between the accountant and the plaintiff, such as a face-to-face conversation, the sharing of documents, or other 'substantive communication' between the parties," *Securities Investor Protection Corp.,* 222 F.3d at 75, that "evinces the accountant['s] understanding of [plaintiff's] reliance" on his representations. *Credit Alliance*, 65 N.Y.2d at 551. Here, Plaintiff does not allege that anyone from Marcum ever met with or spoke to anyone from Plaintiff. Plaintiff alleges no direct communication between Marcum and Plaintiff in any form. *See Securities Investor Protection Corp.*, 222 F.3d at 75–76 (linking conduct not present where direct contact is "nonexistent or even minimal").

Recognizing the necessity of pleading near-privity (Compl. ¶ 249), Plaintiff makes several allegations (Compl. ¶¶ 250-255). Under settled law, however, these allegations are inadequate.

The allegations that Marcum addressed its audit reports to investors and that "Waterford distributed annual report packages to all investors" (Compl. ¶¶ 250, 254, 255) have been addressed and soundly rejected by the Second Circuit as well as other courts applying New York law. *Meridian Horizon Fund, LP v. KPMG (Cayman),* 487 F. App'x 636, 642 (2d Cir. 2012) (summary order) ("Plaintiffs' allegation that the Auditors addressed their audit reports to 'The Partners' of the funds is not sufficient given that [the audited entity], not the Auditors, sent the reports to the

limited partners"); *Sandalwood Debt Fund A, L.P. v. KPMG LLP,* 2013 WL 3284126, at *6 (N.J. Super. Ct. App. Div. July 1, 2013) (holding that addressing audit reports to the "partners" of a hedge fund does not demonstrate linking conduct and therefore does not establish near-privity under *Credit Alliance*); *see CRT Invs., Ltd. v. BDO Seidman, LLP,* 85 A.D.3d 470, 472 (1st Dep't 2011) ("The fact that plaintiffs were entitled to and received a copy of the audited financial statements, or that [the auditor] knew that the investors would rely upon the information contained in the financial statements, does not establish the requisite linking conduct[.]"); *Prime Plus Acquisition Corp. v. Eisneramper LLP*, 2015 WL 8490460, at *6-7 (N.Y. Sup. Ct., N.Y. Co., Dec. 10, 2015) ("plaintiffs cannot establish linking conduct based on [the accountant's] providing Oak Rock's board and members . . . with copies of the audit reports").

The allegation that as part of its audit procedures Marcum received information about investors' capital balances (Compl. ¶ 251) is irrelevant. It has no bearing on the "particular purpose" and "linking conduct" requirements. As for the "known party" requirement, it does not support the required showing that Plaintiff's reliance on Marcum's audit reports for its investment decision was the "end and aim" *(i.e.*, the particular purpose) of Marcum's audits, particularly where, Marcum was engaged to fulfill regulatory requirements (Compl. ¶ 131) and knew that Plaintiff was <u>*disallowed*</u> from relying on its reports. Also, Plaintiff's theory that an auditor's receipt of investor information in the course of audit procedures can establish near-privity would mean that auditors automatically grant standing to non-clients simply by performing an audit—a result contrary to the caselaw. *CRT Invs., Ltd. v. Merkin*, 918 N.Y.S.2d 397, 2010 WL 4340433, at *12 (Sup. Ct. N.Y. Cnty. May 5, 2010) (routine audit work is not "linking conduct"), *aff'd sub nom. CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470 (1st Dep't 2011); *LaSalle Nat'l Bank v. Ernst*

*& Young LLP*, 285 A.D.2d 101, 106-08 (1st Dep't 2001) (linking conduct requires "affirmative conduct . . . other than the performance of the audit itself").

Similarly, the allegation that as part of its audit procedures Marcum sent a questionnaire to Waterford's independent valuation firm (Compl. ¶ 252) is irrelevant to each of the three prerequisites. It shows nothing about the particular purpose of the audit reports, and nothing about whether the particular purpose of those reports was for Plaintiff's investment decisions. The allegation appears to relate to an audit procedure in which Marcum sent a communication to a third party, not to Plaintiff, and so it cannot constitute "linking" conduct. As explained above, even if Marcum had sent questions directly to Plaintiff (which is not alleged), doing so would not satisfy the "linking" conduct requirement as the performance of audit procedures cannot be interpreted as the auditor's making an affirmative decision to enter into a near-privity relationship with a non-client.

The allegation that Waterford's operating agreement required annual audits to satisfy the SEC custody rule (Compl. ¶ 253) is irrelevant. The custody rule requires that investment advisers who have custody of client funds or securities to maintain those assets with broker-dealers, banks, or other qualified custodians (17 C.F.R. § 275.206(4)-2); it has no bearing on any of the three *Credit Alliance* prerequisites. Moreover, Marcum was not a party to the operating agreement that Plaintiff cites, and whatever is in that agreement cannot be said to evidence anything about whether Marcum was in near-privity with Plaintiff. Finally, § 2.6(b) of that agreement, according to Plaintiff, provides that "[t]he ***Managing Member*** shall…distribute[] to each Member…an annual financial statement [] [] audited by an independent certified public accounting firm," (Complaint ¶ 39 (emphasis added)), which clearly indicates that it would be Waterford, ***not*** Marcum, that would send any audited financial statements to Plaintiff and other members.

## II. THE ALTERNATIVE GROSS NEGLIGENCE CLAIM FAILS FOR LACK OF SCIENTER.

Plaintiff's attempt to avoid the privity requirement fails for lack of scienter allegations. Apparently recognizing the challenges of establishing near-privity, Plaintiff alleges, "[a]lternatively," that if the Court determines that Plaintiff was not in near-privity with Marcum, Plaintiff may assert a claim for "gross negligence" under New York law. (Compl. ¶ 256.) New York law does not recognize gross negligence claims against accountants; rather, plaintiffs must plead and prove fraud. *See Equitable Life Assurance Soc'y. v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1031 & 1033 (S.D.N.Y. 1985) ("While grossly negligent conduct may lead to an inference of fraud, there is no independent action for gross negligence against accountants."). Maintaining such a claim requires that the plaintiff plead and prove, with particularity under Rule 9(b), that the defendant acted with scienter, meaning an intent to commit fraud. Severe recklessness in some circumstances may satisfy the scienter requirement, but only where it is extreme and approximates actual intent to commit fraud. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 426-27, 446 (S.D.N.Y. 2014). A plaintiff attempting to assert such a claim against an auditor must show that the audit at issue was, in essence, "no audit at all." *CRT Invs., Ltd. v. Merkin*, 918 N.Y.S.2d 397, 2010 WL 4340433, at *12-15, (Sup. Ct. N.Y. Cnty. May 5, 2010) (dismissing fraud claim against auditor for failing to adequately plead scienter), *aff'd sub nom. CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470 (1st Dep't 2011).

Plaintiff acknowledges the "no audit at all" standard (Compl. ¶ 259), but Plaintiff's complaint does not come close to meeting it. On the contrary, Plaintiff admits that Marcum in fact conducted audits of Waterford's financial statements which were documented in extensive work papers that Plaintiff cites throughout the complaint. (Compl. ¶¶ 45-47, 56, 62-63, 88-89, 99-108, 138, 174, 273.) As noted above, Plaintiff admits that Marcum's audit work encompasses numerous

procedures including review of life insurance policies (Compl. ¶ 46), discount rates and policy-by-policy adjustments (Compl. ¶ 56), responses to questionnaires sent to third-parties (Compl. ¶ 62), third-party valuations (Compl. ¶ 63), internal Marcum valuation memos (Compl. ¶ 101), numerous management assessments and materiality work sheets (Compl. ¶ 108), and a sensitivity analysis (Compl. ¶ 111). The conclusory assertion that Marcum conducted "no audit at all" is not particularized and furthermore is belied by the allegations of Plaintiff's own complaint and the over 35,000 pages of workpapers produced in the Cook County Action (Compl. ¶ 62).

Plaintiff may fall back on the contention that the audits that Marcum conducted were not perfect—or even good—audits. But that is not the standard under New York law. Significantly, the allegation that in conducting its audits Marcum failed to comply with professional auditing standards (Compl. ¶¶ 257-258) is not adequate to plead a fraud claim as a matter of established law. Courts uniformly reject efforts to plead scienter based on allegations of violations of GAAP, GAAS, and PCAOB standards. *See, e.g., Stephenson v. PricewaterhouseCoopers*, *LLP*, 768 F. Supp. 2d 562, 573-75 (S.D.N.Y. 2011) ("allegations of GAAP and GAAS violations are not sufficient"); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,* 33 F. Supp. 3d 401, 428-433, 446 (S.D.N.Y. 2014) ("[b]lanket allegations of accounting irregularities or failure to follow GAAP, standing alone, cannot pass muster") (collecting cases).

Plaintiff attempts to allege "red flags," to no avail. Plaintiff's purported red flags are *not* red flags under the law. *Special Situations Fund III,* 33 F. Supp. 3d at 427-28 (red flags are specific facts that would place a reasonable auditor on notice that the audited company was engaging in wrongdoing to the detriment of investors that the auditor had actual knowledge of, not merely access to information by which it could have discovered the fraud). The purported red flags in the complaint consist of allegations that Marcum received third-party valuation reports that contained

disclaimers such as their values are "not guaranteed" and represent "only estimates." (Compl. ¶¶ 85-89.) There is nothing alarming about such reports or disclaimers. Indeed, the very figures at issue in this lawsuit (the valuation of life settlement policies held by Waterford that are not traded on a market exchange or otherwise readily valued based on observable market data) were unquestionably estimates. Plaintiff acknowledges as much, as the complaint (Compl. ¶ 258) cites the auditing standard, AS 2501, titled "Auditing Accounting Estimates, including Fair Value Measurements," which governs how auditors audit accounting estimates. *See* AS 2501.02, available on the PCAOB website at https://pcaobus.org/oversight/standards/auditing-standards/details/AS2501 ("An accounting estimate is a measurement . . . that generally involves subjective assumptions and measurement uncertainty."). Plaintiff also mentions a third-party reliance disclaimer in the valuation reports (Compl. ¶ 89), which is unremarkable, especially given that the disclaimer did not apply to Marcum, as the reports explicitly state that they are for "the sole use of HA-Select Waterford LLC, including their … auditors." (*E.g.,* Ex. L at 1.)

## III. THE AIDING AND ABETTING CLAIM FAILS FOR LACK OF ACTUAL KNOWLEDGE AND SUBSTANTIAL ASSISTANCE.

The aiding and abetting claim (Count V) is duplicative of the malpractice claim and fails to plead the essential elements of actual knowledge or substantial assistance.

### A. The aiding and abetting claim is duplicative.

*First*, the aiding and abetting claim is duplicative. Because the claim is premised upon the same allegations about Marcum's audits reports (*see* Compl. ¶¶ 270-277) as the malpractice claim, it may be dismissed as duplicative. *See Holtkamp v. Parklex Assocs.*, 926 N.Y.S.2d 344, 2011 WL 621122, at *14 (Sup. Ct. Kings Cnty. Feb. 22, 2011), *aff'd*, 94 A.D.3d 819 (2012) (denying leave to add aiding and abetting breach of fiduciary duty claim as duplicative of malpractice claim because both claims "seek relief for identical allegations arising out of the same transaction").

### B. Plaintiff fails to plead actual knowledge.

Second, Plaintiff fails to plead actual knowledge of a breach of fiduciary duty by GCM and GAM. A "plaintiff may not merely rely on conclusory and sparse allegations that the aider [and] abettor knew or should have known about the primary breach of fiduciary duty [or fraud]." *Global Minerals & Metals Corp. v. Holme,* 35 A.D.3d 93, 101-02 (1st Dep't 2006); *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003) ("[T]here must be an allegation that such defendant had actual knowledge of the breach of duty[.]"). Constructive knowledge, as Plaintiff admits (Compl. ¶ 267), is not enough. *Kaufman,* 307 A.D.2d. at 125 ("Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability.").

The allegation that there were disclaimers in third-party valuation reports (Compl. ¶ 267(a)) is, as discussed above, not remarkable, and certainly not evidence that GCM and GAM breached a fiduciary duty to Plaintiff. The allegation that Marcum had "access to" acquisition pricing information (Compl. ¶ 267(b)) does not logically bear on what Marcum actually knew; Plaintiff does not allege that Marcum reviewed the data it allegedly had access to, much less concluded that it demonstrated that GCM and GAM breached fiduciary duties to Plaintiff. *See CRT Invs., Ltd. v. Merkin*, 918 N.Y.S.2d 397, 2010 WL 4340433, at *12-15 (Sup. Ct. N.Y. Cnty. May 5, 2010) (no "actual knowledge" where plaintiff "simply alleg[es] that the 'auditor had access to the information by which it could have discovered the fraud'"), *aff'd sub nom. CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470 (1st Dep't 2011). The allegation that GCM and GAM engaged in a systematic pattern of drastic markups in valuing life insurance policies that it purchased (Compl. ¶ 267(c)) likewise does not support a conclusion that Marcum had actual knowledge of a breach of fiduciary duty: the very business of Waterford was to purchase life insurance policies at bargain prices in order to turn a profit (Compl. ¶¶ 31-32), and so there is nothing inherently alarming about Waterford's marking the policies up upon acquisition. Finally, the allegation that discount rates

used by Waterford were different from discount rates implied by Waterford's own acquisition pricing (Compl. ¶ 268) on its face offers no evidence of actual knowledge, as Plaintiff does not allege that Marcum was aware of the discrepancy or even that Marcum was able to and did calculate the discount rates that were allegedly "implied" by acquisition pricing.

**C. Plaintiff fails to plead substantial assistance.**

Third, Plaintiff fails to plead substantial assistance. Substantial assistance requires that the alleged aider and abettor affirmatively assist and thereby enabling the breach to occur. *Kaufman*, 307 A.D.2d at 126. Substantial assistance means "more than just performing routine business services." *CRT Invs., Ltd. v. BDO Seidman LLP,* 85 A.D.3d 470, 472 (1st Dep't 2011). Here, Plaintiff's claim of substantial assistance is based on the professional auditing services that Marcum provided to Waterford: "Marcum provided substantial assistance through (a) unqualified audit opinions . . . and (b) affirmative misrepresentations in audit opinions." (Compl. ¶ 270.) This is precisely the type of routine business services that as a matter of law cannot constitute substantial assistance in a breach of fiduciary duty. *CRT,* 85 A.D.3d at 472 (no "substantial assistance" where the "complaint fails to plead a factual basis for inferring that BDO Seidman did anything more than perform the routine business of auditing"). Outside of Marcum's routine audit work, Plaintiff fails to plead how else Marcum "substantially assisted" GCM and GAM. *See CRT Invs., Ltd. v. Merkin*, 918 N.Y.S.2d 397, 2010 WL 4340433, at *14 (Sup. Ct. N.Y. Cnty. May 5, 2010) (dismissing aiding and abetting claim), *aff'd sub nom. CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470 (1st Dep't 2011).

## IV. THE CLAIMS ARE TIME-BARRED.

To the extent that they are based on allegations that Plaintiff purchased its interest in Waterford at inflated prices and/or held onto its interest in reliance on Marcum's audit reports (Compl. ¶¶ 125-127, 186-189) the claims are untimely.

### A. The malpractice claim is time-barred.

The malpractice claim (Count IV) is untimely. The statute of limitations for auditor malpractice is three years, CPLR § 214(4); *RGH Liquidating Tr. v. Deloitte & Touche LLP*, 47 A.D.3d 516, 517 (1st Dep't 2008). The three-year period starts to run from the date of the audit report. *Williamson v. PricewaterhouseCoopers LLP,* 9 N.Y. 3d 1, 7-8 (2008). Plaintiff's claim contains two theories: *first*, that Plaintiff purchased its investment interest in reliance on Marcum audit reports (the "Purchaser Claim") and, *second*, that Plaintiff continued to hold (*i.e.*, did not redeem) its investment interest in reliance on Marcum audit reports (the "Holder Claim"). (Compl. ¶¶ 127, 131-132, 186, 261, 263.) Both are time-barred because the complaint was filed more than three years after the date of the audit reports at issue.

*The Purchaser Claim*. The Purchaser Claim is time-barred. Plaintiff alleges that it purchased an investment interest in Waterford over the period between 2017 and December 31, 2021. (Compl. ¶¶ 18, 127.) The last audit report Plaintiff could have relied on in deciding to purchase its interest was the report for the year ending December 31, 2020, which was issued on April 20, 2021. (Ex. I.)[1] Under the three-year statute, any claim based on that audit report had to be filed no later than April 20, 2024 (and claims based on prior audit reports expired even earlier). Plaintiff did not file this action until February 23, 2026, which is more than three years after the issuance of the last audit report on which it could have relied when making its purchases.

[1] Marcum's audit report for the year ending December 31, 2021 was issued on April 26, 2022 (Ex. J), after Plaintiff had already purchased its interest.

*The Holder Claim*. The Holder Claim is also time-barred. Any holder claim must be based on Plaintiff's decision to continue to hold (*i.e.*, not redeem) its interest from the time of original purchase until December 28, 2021, when, Plaintiff admits, Waterford suspended redemptions and commenced a wind-down. (Compl. ¶ 110.) After December 28, 2021, Plaintiff could not have been relying on Marcum's audit reports in continuing to hold, but rather was continuing to hold because it had no choice because Waterford was no longer allowing redemptions. (Compl. ¶¶ 12, 110, 153.) Again, the last audit report Plaintiff could have relied on in deciding to continue to hold its interest was the report for the year ending December 31, 2020, issued on April 20, 2021. (Ex. I.)[2] The claim is time-barred, as it would have to have been filed by December 28, 2024 at the latest.

**B. The aiding and abetting claim is also time-barred.**

The aiding and abetting claim (Count V) is subject to dismissal as untimely. Given that Plaintiff is seeking money damages, its claim for aiding and abetting breach of fiduciary duty is subject to the three-year statute of limitations in CPLR § 214(4). *Hudson v. Delta Kew Holding Corp.*, 2014 WL 1924324, at *4 (N.Y. Sup. Ct., Suffolk Co., April 22, 2014). As explained above, the complaint was not filed within three years of the relevant audit reports and so is untimely.

**C. New York's savings statute does not apply.**

Plaintiff may not rely on the Cook County Action and CPLR § 205(a)—which applies to certain actions commenced within six months after the termination of a timely filed prior action—for two reasons. *First*, the prior action filed by Plaintiff did not assert a claim against Marcum, but rather identified Marcum as a "respondent in discovery," meaning an individual or entity that plaintiff "believe[s] to have information essential to the determination of who should be properly named as additional defendants in the action." 735 Ill. Comp. Stat. 5/2-402 (2026). CPLR § 205(a)

[2] Marcum's audit report for the year ending December 31, 2021 was issued on April 26, 2022 (Ex. J), after Waterford suspended redemptions.

cannot be invoked against a defendant who was not named as a defendant in the prior action. *Raji v. SG Americas Securities, LLC,* 189 A.D.3d 514, 515 (1st Dep't 2020) ("CPLR 205(a) cannot apply to render plaintiff's claims against defendant SG Americas Securities, Inc. (SG Inc.) timely, however, since SG Inc. was not a party to the [prior] action."); *Caplan v. Winslett*, 218 A.D.2d 148, 153–154 (1st Dep't 1996) (same).[3] *Second*, if Plaintiff had asserted the present claims against Marcum in the Cook County Action, they would not have been timely. CPLR 205(a) only applies where "the new action would have been timely commenced at the time of commencement of the prior action." CPLR § 205(a). Plaintiff initiated the Cook County Action on May 2, 2025, after the statute of limitations had already run.

**D. The continuous representation doctrine does not apply.**

While the continuous representation doctrine tolls the statute of limitations in some circumstances where a professional provides continuous representation with a client, it does not apply in the present case for two reasons.

*First*, the continuous representation doctrine, derived from medical malpractice cases where a doctor maintains an on-going relationship with a patient, does not apply where, as here, there was no professional relationship between the plaintiff and the defendant. *See Town of Greenburgh v. Spectraserv, Inc.*, 2010 WL 11712813, at *5-8 (S.D.N.Y., 2010) ("Since [third-party plaintiff] was not a client of either [defendant], it cannot rely on the continuous treatment doctrine to toll the statute of limitations."); *Moskowitz v. Fischer*, 2022 WL 1483958, at *3-5 (Sup. Ct. Suffolk Cnty. May 3, 2022) (holding the continuous representation doctrine did not apply because

[3] *See also Hughley v. Alcaraz,* 494 N.E.2d 706, 710 (Ill. App. Ct. 1986) (savings statute had "no effect in preserving [plaintiff's] claim against [respondent in discovery] . . . since he was never named as a defendant in that action"); *Gysan v. Francisko*, 2017 WL 5294311, at *4 (N.D.Ill., 2017) (savings statute inapplicable because plaintiff never converted the respondent in discovery into a defendant under 735 ILCS 5/2-402 and "under Illinois law, respondents in discovery are not defendants") (collecting cases).

"plaintiff did not have a direct professional relationship with the defendants"). Here, Marcum served as auditor for its client, Waterford, pursuant to engagement agreements between Marcum and Waterford; Marcum had no professional relationship with Plaintiff.

Second, the continuous representation doctrine does not apply where, as here, the audit firm enters into a new engagement agreement each year with its audit client. *Williamson v. PricewaterhouseCoopers LLP,* 9 N.Y. 3d 1, 10-11 (2008). Writing for the unanimous court, Judge Jones explained, in language equally applicable in the present case, why the continuous representation doctrine did not apply:

> Plaintiff's allegations make clear that for the years in question, the Funds entered into annual engagements with defendant for the provision of separate and discrete audit services for the Funds' year-end financial statements, and once defendant performed the services for a particular year, no further work as to that year was undertaken.

*Williamson*, 9 N.Y. 3d at 10-11. For each relevant year, Marcum and Waterford entered into annual engagement agreement providing that there would be no continuous representation; rather, each agreement provided that the annual audit engagement "ends on delivery of our audit report" and that any additional further work would have to be the subject of a new and separate engagement agreement. (Ex. A at 7; Ex. B at 9; Ex. C at 9; Ex. D at 9; Ex. E at 10; Ex. F at 10.) *Williamson*, directly on point and from New York's highest court, is controlling.

**E. Equitable estoppel does not apply.**

Equitable estoppel also is unavailable to Plaintiff, for similar reasons. *First*, the equitable estoppel doctrine, also derived from medical malpractice cases where a doctor maintains an on-going relationship with a patient, does not apply where, as here, there was no professional relationship between the plaintiff and the defendant. *See Simcuski v. Saeli*, 44 N.Y. 2d 442, 447-50 (1978) (equitable estoppel arising where defendant physician whose negligently performed surgery caused spinal injury fraudulently told plaintiff that her pain would disappear if she

continued treatment and physiotherapy, which induced her to refrain from filing a timely medical malpractice action). Marcum, which served as auditor for Waterford, had no professional relationship with Plaintiff at any point in time.

Second, equitable estoppel only applies where the defendant takes additional steps, beyond failing to disclose the original wrongdoing, to induce the plaintiff not to file a timely action. *Compare Simcuski*, 44 N.Y. 2d at 447-48 (equitable estoppel applied where physician defendant not only "intentionally concealed the alleged malpractice from plaintiff," but also "falsely assured her of effective treatment, as a result of which plaintiff did not discover the injury") *with Zumpano v. Quinn*, 6 N.Y. 3d 666, 674-75 (2006) (equitable estoppel not available against defendant clergy who knew of sexual abuse of minors but remained silent because it is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit"); *Cusimano v. Schnurr,* 137 A.D.3d 527, 532 (1st Dep't 2016) ("Here, equitable estoppel is inapplicable because the alleged fraudulent concealment forms the basis of both plaintiff's estoppel argument and the underlying claims."). Here, Plaintiff alleges that Marcum was engaged on an annual basis to audit the financial statements of its client, Waterford; Plaintiff alleges no separate affirmative conduct on the part of Marcum to induce Plaintiff not to file a timely action.

## V. DISMISSAL SHOULD BE WITH PREJUDICE.

The Court should dismiss the complaint against Marcum with prejudice because amendment would be futile. *See, e.g., Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) (affirming dismissal without leave to amend "[w]here it appears that granting leave to amend is unlikely to be productive" because plaintiff "had ample access to discovery" from a prior proceeding.) Given the nature of the defects described above—including fundamental defects under the substantive law of New York state law and the expired statute of limitations—it is clear

that no amended complaint could state a valid claim against Marcum. Additionally, having obtained pre-lawsuit discovery in the Cook County Action, including a large document production from Marcum, Plaintiff has already had the benefit of discovery that federal court plaintiffs normally do not have in crafting their complaints. The complaint cites Marcum's work papers liberally, reflecting that Plaintiff has taken its best shot at preparing a complaint that states a cause of action. Indeed, Plaintiff has effectively already had an opportunity to attempt to cure the above defects, all of which were pointed out in pre-motion letters pursuant to this Court's motion procedures.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's complaint against Marcum with prejudice.

Dated: July 20, 2026

Respectfully Submitted,

DECHERT LLP
Gregory G. Ballard
Priyadarshini Das
1095 Avenue of the Americas
New York, New York 10036
+1 (212) 698-3540
greg.ballard@dechert.com
priyadarshini.das@dechert.com

Attorneys for Defendant Marcum LLP

**CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the Joint Local Rules, S.D.N.Y. and E.D.N.Y (January 2, 2026), I certify that the accompanying Memorandum of Law contains fewer than 8,750 words and thereby complies with the Court's word-count limitation for such document. More specifically, the within Memorandum of Law—exclusive of its caption, table of contents, table of authorities and signature block—contains 6,302 words as measured by the word count feature of the word-processing program that was used to prepare said document.

Dated: July 20, 2026

DECHERT LLP
Priyadarshini Das
1095 Avenue of the Americas
New York, New York 10036
+1 (212) 698-3540
priyadarshini.das@dechert.com

Attorneys for Defendant Marcum LLP