**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CORI-SCHUBERT DE CORI, TRUSTEE OF THE CORI-SCHUBERT DE CORI REVOCABLE TRUST, individually and on behalf of all others similarly situated, | Case No.: 7:26-cv-01513-PMH |
| Plaintiff, | |
| v. | |
| HASELECT-WATERFORD LLC, GRIFFIN CAPITAL MANAGEMENT LLC, GRIFFIN ASSET MANAGEMENT LLC, MICHAEL GRIFFIN, and MARCUM LLP, | |
| Defendants. | |

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MARCUM LLP'S MOTION TO DISMISS

DECHERT LLP
Gregory G. Ballard
Priyadarshini Das
1095 Avenue of the Americas
New York, New York 10036
+1 (212) 698-3540
greg.ballard@dechert.com
priyadarshini.das@dechert.com

Attorneys for Defendant Marcum LLP

Dated: September 8, 2026

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

I. THE MALPRACTICE CLAIM FAILS FOR LACK OF PRIVITY. ..... 1

II. THE ALTERNATIVE GROSS NEGLIGENCE CLAIM FAILS FOR LACK OF SCIENTER. ..... 4

III. THE AIDING AND ABETTING CLAIM FAILS FOR LACK OF ACTUAL KNOWLEDGE AND SUBSTANTIAL ASSISTANCE. ..... 5

A. The aiding and abetting claim is duplicative. ..... 5

B. Plaintiff fails to plead actual knowledge. ..... 6

C. Plaintiff fails to plead substantial assistance. ..... 6

IV. THE CLAIMS ARE TIME-BARRED. ..... 7

A. The malpractice claim is time-barred. ..... 7

B. The aiding and abetting claim is also time-barred. ..... 9

C. New York's savings statute does not apply. ..... 10

D. The continuous representation doctrine does not apply. ..... 10

E. Equitable estoppel does not apply. ..... 11

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Point Med., LLC v. Mandell*,
106 A.D.3d 40 (2013) ....................9, 10

*Anwar v. Fairfield Greenwich Ltd.*,
884 F. Supp. 2d 92 (S.D.N.Y. 2012)....................2

*Bullen v. CohnReznick*,
194 A.D.3d 637 (1st Dep't 2021) ....................6

*Bullen v. Sterling Valuation Group, Inc.*,
67 Misc. 3d 1227(A) (Sup. Ct. N.Y. Cnty. 2020)....................6

*Caplan v. Winslett*,
218 A.D.2d 148 (1st Dep't 1996) ....................10

*Chill v. General Elec. Co.*,
101 F.3d 263 (2d Cir. 1996)....................4, 5

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
65 N.Y.2d 536 (1995) ....................1, 2, 3, 4

*CRT Invs., Ltd. v. BDO Seidman, LLP*,
85 A.D.3d 470 (1st Dep't 2011) .................... *passim*

*CRT Invs., Ltd. v. Merkin*,
2010 WL 4340433 (Sup. Ct. N.Y. Cnty. May 5, 2010),
*aff'd sub nom. CRT Invs., Ltd. v. BDO Seidman, LLP*, 85 A.D.3d 470 (1st Dep't 2011) .................... *passim*

*Cromer Finance Ltd. v. Berger*,
2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001)....................2

*Cusimano v. Schnurr*,
137 A.D.3d 527 (2016) ....................10

*DeLollis v. Friedberg, Smith & Co., P.C.*,
933 F. Supp. 2d 354 (D. Conn. 2013), *aff'd,* 600 F. App'x 792 (2d Cir. 2015) ....................2

*Dorking Genetics v. United States*,
76 F.3d 1261 (2d Cir. 1996)....................3

*Gysan v. Francisko*,
2017 WL 5294311 (N.D. Ill. 2017) ....................10

*Hoffman v. RSM US LLP*,
169 A.D.3d 522, 524 (1st Dep't 2019) ....................6

*Hughley v. Alcaraz*,
494 N.E.2d 706 (Ill. App. Ct. 1986) ....................10

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
998 F. Supp.2d 157(S.D.N.Y. 2014) ....................4

*Johnson v. Proskauer Rose LLP*,
129 A.D.3d 59 (1st Dep't 2015) ....................5

*Kaufman v. Cohen*,
307 A.D.2d 113 (2003) ....................9

*Malay v. City of Syracuse*,
25 N.Y.3d 323 (2015) ....................10

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
487 F. App'x 636 (2d Cir. 2012) ....................2, 3

*Mitschele v. Schultz*,
36 A.D.3d 249 (1st Dep't 2006) ....................9

*Monaghan v. Ford Motor Co.*,
71 A.D.3d 848 (2010) ....................9

*New York State Workers' Comp. Bd. v. Fuller & LaFiura, CPAs, P.C.*,
146 A.D.3d 1110 (3d Dep't 2017) ....................9

*Norex Petroleum Ltd. v. Blavatnik,*
23 N.Y.3d 665 (2014) ....................10

*Parrott v. Coopers & Lybrand*,
95 N.Y.2d 479 (2000) ....................2

*Powers Mercantile Corp. v. Feinberg*,
109 A.D.2d 117 (1st Dep't 1985) ....................8

*Prime Plus Acquisition Corp. v. EisnerAmper LLP*,
2015 WL 8490460 (N.Y. Sup. Ct., N.Y. Co., Dec. 10, 2015) ....................3

*Raji v. SG Americas Securities, LLC*,
189 A.D.3d 514 (1st Dep't 2020) ....................10

*Rath v. Pitcher*,
2014 WL 1315413 (W.D.N.Y. Mar. 28, 2014) .......... 9

*Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*,
222 F. 3d 63 (2d Cir. 2000) .......... 4

*Simcuski v. Saeli*,
44 N.Y. 2d 442 (1978) .......... 11

*State Workers' Comp. Bd. v. Madden*,
119 A.D.3d 1022 (3d Dep't 2014) .......... 8

*State Street Trust Co. v. Ernst*,
278 N.Y. 104 (1938) .......... 4

*Symbol Tech., v. Deloitte & Touche, LLP*,
69 A.D.3d 191 (2d Dep't 2009) .......... 10, 11

*Travelers Cas. & Sur. Co. v. Dormitory Auth. of N.Y.*,
2005 WL 1177715 (S.D.N.Y. May 19, 2005) .......... 3

*White v. Guarente*,
43 N.Y.2d 356 (1977) .......... 2

*Williamson v. PricewaterhouseCoopers LLP*,
9 N.Y. 3d 1 (2008) .......... 10

*Zumpano v. Quinn*,
6 N.Y. 3d 666 (2006) .......... 11

**Other Authorities**

CPLR § 205 .......... 10

Federal Rule of Civil Procedure 9(b) .......... 4

Marcum respectfully submits this reply memorandum in response to Plaintiff's memorandum in opposition ("Opposition" or "Opp.") in support of its motion to dismiss.

## PRELIMINARY STATEMENT

Plaintiff's claims—based on allegations that Marcum negligently (or fraudulently) failed to comply with professional auditing standards—fail for the reasons set forth in the *CRT* decisions prominently featured in Marcum's opening brief ("Opening Brief"). Plaintiff's attempt to distinguish *CRT* on the ground that it involved allegations relating to the "routine business of auditing" falls flat; the present complaint is based on the same kinds of allegations of negligently (or fraudulently) performed audits as were at issue in *CRT*.

## I. THE MALPRACTICE CLAIM FAILS FOR LACK OF PRIVITY.

Plaintiff concedes that it was not in *actual privity* and acknowledges that *Credit Alliance* supplies the "controlling" standard for *near-privity*. (Opp. at 6.) Plaintiff's arguments regarding its purported satisfaction of the three near-privity requirements are without merit.

On the "particular purpose" requirement, Plaintiff all but concedes that the requirement cannot be satisfied, as Plaintiff states that the audits were for "investor reporting" (Opp. at 7)—i.e., reporting to investors who had already decided to invest in Waterford. Indeed, Plaintiff states that there were "several" purposes of the audited financial statements—reporting to investors, satisfying the regulatory custody rule, and enabling investors to file tax returns (Opp. at 7)—all of which are unrelated to the investors' *decisions to invest*. Investors in Waterford were entitled to receive historical financial statements *after* they had already made their investment decision and had become members of Waterford. (Compl. ¶ 254.)

As for the "known party" requirement, Plaintiff ignores its allegation that Waterford was an open fund that was continuously marketed to new investors (Compl. ¶ 154) and bases its argument on exactly the opposite (Opp. at 8) ("Waterford was a closed fund with a fixed

membership"). As alleged in the complaint, the sponsors of Waterford marketed Waterford broadly to prospective investors, and Marcum could only learn after the fact (during its audit of the prior-year financial statements) who had become an investor in the prior year.

Plaintiff's reliance on the pre-*Credit Alliance* case *White v. Guarente*, 43 N.Y.2d 356, 359 (1977) (Opp. at 8), is misplaced. There, the accountant audited a small, limited liability partnership of 42 investors and was expressly retained to prepare tax returns the investors would rely on. As explained in *Parrott v. Coopers & Lybrand,* in *White*, "the question of privity was besides the point" because "the retainer contract imposed the specific duty on the accountants and created the limited partners' rights" and "the accounting firm prepared tax returns for the partnership, including the 40 limited partners[.]" 263 A.D.2d 316, 323-24 *aff'd,* 95 N.Y.2d 479 (2000). Plaintiff does not allege or argue that Marcum prepared Plaintiff's or any of the Members' tax returns. Plaintiff admits that Waterford, not Marcum, sent the information to the Members. (Compl. ¶ 144.)

On the "linking conduct" requirement, Plaintiff acknowledges the on-point authority from the Second Circuit—*Meridian Horizon Fund, LP v. KPMG (Cayman)*—which held that addressing an audit report to investors is not linking conduct (Opp. at 10-11), but Plaintiff inexplicably argues that there was linking conduct because Marcum addressed its audit reports to investors (Opp. at 10). Plaintiff's reliance on *Anwar v. Fairfield Greenwich Ltd.* (Opp. at 11) is misplaced because the district court's opinion cannot be read to nullify the opinion of the Second Circuit in *Meridian*, which makes clear that the present fact pattern does not constitute near-privity. *DeLollis v. Friedberg, Smith & Co., P.C.*, 933 F. Supp. 2d 354, 361 (D. Conn. 2013), *aff'd,* 600 F. App'x 792 (2d Cir. 2015) (Opp. at 11), distinguished *Meridian* and *CRT Investments* because in both, the audited entity, not the auditor, sent the reports to investors, as Plaintiff alleges Waterford did here (Compl. ¶¶ 39, 254). *Cromer Finance Ltd. v. Berger* (Opp. at 11) is a federal court decision that

has since been contradicted by subsequent New York precedent. *See CRT Invs., Ltd. v. BDO Seidman, LLP,* 85 A.D.3d 470, 472 (1st Dep't 2011); *Prime Plus Acquisition Corp. v. EisnerAmper LLP*, 2015 WL 8490460, at *6-7 (N.Y. Sup. Ct., N.Y. Co., Dec. 10, 2015). Neither *Dorking Genetics v. United States* nor *Travelers Cas. & Sur. Co. v. Dormitory Auth. of N.Y.* (Opp. at 13), involved auditors or accountants, and both predate *Meridian*.

Plaintiff's discussion of *Credit Alliance* misses the point. The *Credit Alliance* court addressed two cases, holding in one that near-privity was adequately alleged and in the other that near-privity was not. The Court found the allegations in the *European Bank* case—which included allegations of defendant's "direct communication, both orally and in writing," and continual "personal meetings" with plaintiff—to be adequate. *Credit Alliance*, 65 N.Y.2d at 554. The Court found the allegations in the *Credit Alliance* case—where, as here, there were no allegations of "any direct dealings with plaintiffs," "any word or action on the part of [defendant] directed to plaintiffs," or "anything contained in [defendant's] retainer agreement […] which provided the necessary link"—to be inadequate. *Id.* at 553-54. The Court of Appeals could not have been clearer: allegations like those here do not constitute near-privity under New York law.

Plaintiff claims Marcum told investors "the valuation had been independently developed and validated by a third party" (Opp. at 12), but Marcum's audit reports contain no such statement (Ex. G at 1-2; Ex. H at 1-2; Ex. I at 1-2; Ex. J at 1-2; Ex. K at 1-2). Plaintiff notes that *Prime Plus Acquisition Corp.* found a single direct conversation insufficient for linking conduct (Opp. at 12-13); here Plaintiff alleges *no* conversation (or any other linking conduct) with Marcum.

Plaintiff's contention that direct contact is not required is wrong, and Plaintiff's reliance on Judge Marrero's opinion in *Anwar* is misplaced, as Judge Marrero has explained: "Contrary to Plaintiffs' argument, *Anwar II* does not stand for the proposition that linking conduct can be shown

without direct conduct. . . . Instead, as the Second Circuit squarely held in *BDO Seidman*, the absence of any direct contact between an accountant and the plaintiffs is fatal to a negligence claim." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp.2d 157, 188-89 (S.D.N.Y. 2014) (citations omitted); *see Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222 F. 3d 63, 75 (2d Cir. 2000) ("Where direct contact between the accountant and the plaintiff has been nonexistent or even minimal, however, the plaintiff cannot recover for negligence.").

The suggestion that the Court must accept privity allegations (Opp. at 13) is mistaken; many decisions, including *Credit Alliance*, dismiss claims at the pleading stage for lack of privity.

## II. THE ALTERNATIVE GROSS NEGLIGENCE CLAIM FAILS FOR LACK OF SCIENTER.

Plaintiff's complaint pays lip service to the "no audit at all" standard from *CRT Invs., Ltd. v. Merkin* (Compl. ¶ 98), which in turn cites *State Street* (Opp. at 14). 918 N.Y.S.2d 397, 2010 WL 4340433, at *12 (Sup. Ct. N.Y. Cnty. May 5, 2010). Plaintiff is now wrong to argue that this standard is inapplicable. As *Chill v. General Elec. Co.*, cited by Plaintiff (Opp. at 18), explains, while Rule 9(b) allows mental state to be pled generally, this "relaxation" is not "a license to base claims of fraud on speculation and conclusory allegations." 101 F.3d 263, 267-71 (2d Cir. 1996).

*State Street* may stand for the proposition that an auditor may be liable for stating that it has knowledge when it has no knowledge or for stating an opinion that it does not sincerely believe, but there are no such allegations here. According to the allegations in Plaintiff's complaint, Marcum conducted audits and gathered vast knowledge in voluminous work papers, and so there is not, and cannot be, any allegation that Marcum had no knowledge to support its audit opinion, and there is no allegation that Marcum did not sincerely believe its audit opinion (which stated, in essence, that Marcum believed based on its audit that Waterford's financial statements were not materially misstated). (Ex. G at 1-2; Ex. H at 1-2; Ex. I at 1-2; Ex. J at 1-2; Ex. K at 1-2.)

Plaintiff's criticisms of Marcum's audit work amount to no more than allegations that Marcum's audit did not comply with professional standards, which is never enough to establish scienter for purposes of a fraud claim. *CRT Invs., Ltd. v. Merkin*, 2010 WL 4340433, at *12-15; *Chill,* 101 F.3d at 270-71.

Plaintiff does not respond to, and therefore concedes, Marcum's arguments regarding why the purported "red flags" alleged in the complaint are not adequate to plead scienter.

## III. THE AIDING AND ABETTING CLAIM FAILS FOR LACK OF ACTUAL KNOWLEDGE AND SUBSTANTIAL ASSISTANCE.

### A. The aiding and abetting claim is duplicative.

As Plaintiff acknowledges, determining whether two claims are duplicative involves assessing the essence of each. (Opp. at 21.) Here, the essence of each of Plaintiff's claims against Marcum is that Marcum's audits failed to comply with professional standards. The malpractice and aiding and abetting claims are based on the same allegedly flawed audit work and the same alleged damages. *Compare* Compl. ¶¶ 247-264 *with* Compl. ¶¶ 265-278. The lead case Plaintiff cites, *Johnson v. Proskauer Rose LLP* (Opp. at 21), proves the point; in that case, the various claims were not duplicative because they involved different alleged misconduct and different damages. 129 A.D.3d 59, 68-70 (1st Dep't 2015).

Plaintiff's argument that the two claims are different because the two claims have different elements (Opp. at 21) is illogical. Of course, the two claims have different elements; that is why they are two different causes of action. There are no two causes of action that have the same elements. What matters is whether the claims, whatever their elements, are based on the same allegations of misconduct and damages. Here, the negligence and aiding and abetting claims—though they obviously have different elements because they are different causes of action—are based on the same allegations of misconduct and damages. Indeed, Plaintiff's allegations of

wrongdoing are set forth in paragraphs 1 through 190, which are incorporated by reference into the malpractice claims (Compl. ¶ 247) and the aiding and abetting claim (Compl. ¶ 265).

Inexplicably, Plaintiff attempts to distinguish *Hoffman v. RSM US LLP*, a case that Marcum did not cite, but which in any event, supports Marcum's position because the court held that allegations based on "the performance of routine business services" fail to state an aiding and abetting claim. 169 A.D.3d 522, 524 (1st Dep't 2019).

**B. Plaintiff fails to plead actual knowledge.**

Plaintiff's argument that it has adequately alleged actual knowledge relies heavily on *Bullen v. CohnReznick*, 194 A.D.3d 637, 638 (1st Dep't 2021), which is readily distinguishable. The auditor in *Bullen* had received negative information from a prior auditor, there was evidence of a material weakness in the audit client's controls, and the audit client had no documentation regarding its valuations. *Id.* Here, there is no allegation of information from a prior auditor or material weaknesses in Waterford's controls, and Plaintiff affirmatively alleges that Waterford not only had documentation for its valuations but that it also had documentation from an independent valuation expert supporting its valuations. (Compl. ¶¶ 46-48, 62-63, 88-89, 99-108.)

**C. Plaintiff fails to plead substantial assistance.**

Plaintiff fails to point to any action taken by Marcum in substantial assistance of the Griffin Defendants' alleged breach of fiduciary duty. Plaintiff concedes that the *CRT* decisions dismissed a substantial-assistance claim where the complaint alleged "nothing more than…the routine business of auditing" (Opp. at 20), but Plaintiff's own substantial-assistance allegations against Marcum rest on exactly the same. *BDO Seidman,* 85 A.D.3d at 472. Plaintiff cites *Bullen v. Sterling Valuation Group, Inc.*, 67 Misc. 3d 1227(A), 2 (Sup. Ct. N.Y. Cnty. 2020), which involved a *valuation* firm that adopted a client's valuations. Here, in contrast, Marcum was engaged to audit

Waterford's financial statements, not to conduct valuations; an independent valuation firm, Lewis & Ellis, was engaged to perform valuations for Waterford, as Plaintiff admits in the complaint. (Compl. ¶ 10.)

Plaintiff is incorrect that substantial assistance cannot be resolved on the pleadings, as New York courts, including the court in *CRT,* have done so.

## IV. THE CLAIMS ARE TIME-BARRED.

### A. The malpractice claim is time-barred.

Plaintiff acknowledges that the statute of limitations for malpractice is three years, running from the date the audit report is delivered to the audit client. (Opp. at 23.)

*The Purchaser Claim*. Plaintiff does not contest that the last audit report Plaintiff could have relied on in deciding to purchase its interest was the report for the year ending December 31, 2020, which was issued on April 20, 2021, and that the statute of limitations on any claim based on that audit report (or prior audit reports) expired on (or before) April 20, 2024. (Opening Brief at 15.) Plaintiff notes that any claim based on an audit report issued after February 23, 2023 would be timely (Opp. at 23) without addressing the fact that *Plaintiff did not make any purchases after February 23, 2023* and therefore could not have relied on any audit report issued after February 23, 2023 in making its purchases. (Opening Brief at 15; Compl. ¶¶ 18, 127 (no purchases made after December 31, 2021).) Plaintiff appears to concede, therefore, that to the extent that the Purchaser Claim is based on Plaintiff's allegedly having been "harmed by overpaying for Waterford units due to the Fund's inflated NAV" (Compl. ¶ 187), the claim is time-barred.

*The Holder Claim.* Plaintiff does not dispute that Waterford suspended redemptions and that Plaintiff could not have sold after December 28, 2021 and that the last audit report Plaintiff could have relied on in continuing to hold its interest was the report for 2020, which was issued in April 2021. (Opening Brief at 16.) Again, therefore, Plaintiff appears to concede that to the extent

that the Holder Claim is based on Plaintiff's allegedly having been "harmed by overpaying for Waterford units due to the Fund's inflated NAV" (Compl. ¶ 187), the claim is time-barred.

Accordingly, even by Plaintiff's own lights, the only aspect of Plaintiff's claim that might not be time-barred would be claims based on Plaintiff's allegedly having been harmed *by means of inflated management fees* (Compl. ¶ 190), as Plaintiff appears to argue (Opp. at 24).

Plaintiff's argument that the six-year statute of limitations for fraud governs its claims against Marcum fails because courts do not apply the six-year period where fraud is "only incidental [and not essential] to the claim asserted," or where a plaintiff is attempting to "circumvent the Statute of Limitations time bar" by casting a stale claim "in fraud." *See Powers Mercantile Corp. v. Feinberg*, 109 A.D.2d 117, 119-20 (1st Dep't 1985). For the six-year statute of limitations to apply, the non-fraud claim must be based on allegations of actual fraud, which Plaintiff has failed to plead. *Id.* at 121.

Courts decline to apply the six-year period to a malpractice claim where, as here, the claim is based on allegations that the professional failed to satisfy professional standards. *See State Workers' Comp. Bd. v. Madden*, 119 A.D.3d 1022, 1027-28 (3d Dep't 2014) (affirming lower court's decision to not apply the fraud six-year statute of limitations to the extent malpractice claim "challenged [defendant's] actions under applicable professional standards."). Plaintiff's citation to *New York State Workers' Comp. Bd. v. Fuller & LaFiura* is misplaced. (Opp. at 23.) That court rejected the defendant's argument that a three-year statute of limitations should apply to the portion of plaintiff's *breach of contract claim* sounding in malpractice, because plaintiff had alleged "intentional acts" not generally found in professional malpractice claims, like the accounting firm "knowingly and willfully disregard[ed] and/or participat[ed] in inappropriate accounting practices . . . and/or manipulat[ed] [the trust's] annual reports and misrepresent[ed] the true financial

condition of [the trust].” 146 A.D.3d 1110, 1114 (3d Dep’t 2017). Plaintiff’s citation to *Mitschele v. Schultz* is inapposite because the court found actionable fraud there only because plaintiff pled specific intentional acts by the accountant: he “perpetrated a fraud on plaintiff from the time they were retained,” falsely assuring her that a compensation arrangement secretly benefiting her employer was “the absolute best way to do it,” all while concealing his own conflicted loyalties. 36 A.D.3d 249, 254-55 (1st Dep’t 2006); (Opp. at 23.) Plaintiff alleges nothing comparable here. Where fraud claims are “part and parcel” with the alleged accounting malpractice, the three-year malpractice limitations period rather than the six-year fraud period applies, and that same result should govern Plaintiff’s malpractice claim against Marcum here. *Rath v. Pitcher*, 2014 WL 1315413, at *7 (W.D.N.Y. Mar. 28, 2014).

**B. The aiding and abetting claim is also time-barred.**

Contrary to Plaintiff’s suggestion (Opp. at 22), the fraud statute of limitations does not apply to the negligence-based malpractice claim (Count IV) or the aiding and abetting claim (Count V), which is a claim for aiding and abetting breach of *fiduciary duty*, not a claim for aiding and abetting fraud. Plaintiff cites cases where courts applied the fraud statute to claims for aiding and abetting breach of fiduciary duty, but in each instance the court found that the breach of fiduciary duty claim was premised on allegations of actual fraud that was not merely incidental to the alleged breach of fiduciary duty. *Kaufman v. Cohen*, 307 A.D.2d 113, 119-20 (2003); *Monaghan v. Ford Motor Co.*, 71 A.D.3d 848, 850 (2010); *Cusimano v. Schnurr*, 137 A.D.3d 527, 529-30 (2016). Plaintiff offers no explanation as to how actual fraud is essential to its breach of fiduciary duty claim against the Griffin Defendants. In fact, Plaintiff’s breach of fiduciary duty allegations are, at bottom, assertions of conflicts of interest that do not sound in fraud. *See Access Point Med., LLC v. Mandell,* 106 A.D.3d 40, 44 (2013) (“We [do not] accept plaintiffs’ alternative

argument that the breach of fiduciary duty claim is essentially a fraud claim, to which the six-year statute would be applicable. The amended complaint is based on an alleged conflict of interest and allegedly impaired professional judgment, and it does not allege the elements of fraud."). Consequently, there is no reason to depart from the general rule, recognized in the cases Plaintiff cites, that where, as here, the remedy sought is monetary in nature, the three-year statute applies.

**C. New York's savings statute does not apply.**

Plaintiff's argument that CPLR 205(a) preserves its claims fails because Marcum was not a defendant in the Cook County Action. Plaintiff's attempt to distinguish *Raji* and *Caplan* misses the point: those cases hold that CPLR 205(a) cannot be invoked against a party who, like Marcum, was not a defendant in the prior action. Plaintiff's authorities *Norex Petroleum Ltd. v. Blavatnik* and *Malay v. City of Syracuse* (Opp. at 25-26) are irrelevant because neither address whether CPLR 205(a) can be invoked against non-defendant in the prior action. Plaintiff also ignores two cases holding that the Illinois savings statute does not preserve claims against a respondent in discovery because "respondents in discovery are not defendants." *Hughley v. Alcaraz*, 494 N.E.2d 706, 709-10 (Ill. App. Ct. 1986), and *Gysan v. Francisko*, 2017 WL 5294311, at *4 (N.D. Ill. 2017). Discovery obligations and document production do not make Marcum a defendant, and Marcum's status as a non-party to the Cook County Action forecloses reliance on CPLR 205(a).

**D. The continuous representation doctrine does not apply.**

Plaintiff concedes that separate annual engagement letters preclude continuous representation, having itself argued that "[e]ach Marcum audit carries its own accrual date" and that *Williamson v. PricewaterhouseCoopers LLP* held a fund's "annual engagements . . . for the provision of separate and discrete audit services" do not merge into a continuous course of representation. (Opp. at 24-25.) Plaintiff's reliance on *Symbol Tech., v. Deloitte & Touche, LLP*,

69 A.D.3d 191, 196 (2d Dep't 2009) (Opp. at 25), where the auditor continued to perform auditing services *without seeking the execution of new engagement letters*, has no bearing here, where Marcum sought to and did execute a new engagement agreement each year.

**E. Equitable estoppel does not apply.**

Plaintiff ignores Marcum's equitable estoppel arguments (that the doctrine does not apply where, as here, there was no professional relationship between the plaintiff and the defendant and that Plaintiff had failed to allege that the defendant took additional steps beyond failing to disclose prior wrongdoing). Purporting to "preserve" its position without "further argument" makes no sense; Plaintiff was bound to respond to Marcum's arguments in its opposition or else waive them. The suggestion that estoppel is a "question of fact" unsuited to a motion to dismiss (Opp. at 26) is wrong: neither *Simcuski v. Saeli* nor *Zumpano v. Quinn* stands for the proposition that equitable estoppel cannot be resolved where, as here, the issue can be resolved on the pleadings and motion papers.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's complaint against Marcum *with prejudice*.

Dated: September 8, 2026

Respectfully Submitted,

DECHERT LLP
Gregory G. Ballard
Priyadarshini Das
1095 Avenue of the Americas
New York, New York 10036
+1 (212) 698-3540
greg.ballard@dechert.com
priyadarshini.das@dechert.com

Attorneys for Defendant Marcum LLP

**CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the Joint Local Rules, S.D.N.Y. and E.D.N.Y (January 2, 2026), I certify that the accompanying Reply Memorandum of Law contains fewer than 3,500 words and thereby complies with the Court's word-count limitation for such document. More specifically, the within Memorandum of Law—exclusive of its caption, table of contents, table of authorities and signature block—contains 3,479 words as measured by the word count feature of the word-processing program that was used to prepare said document.

Dated: September 8, 2026

______________________________

DECHERT LLP
Priyadarshini Das
1095 Avenue of the Americas
New York, New York 10036
+1 (212) 698-3540
priyadarshini.das@dechert.com

Attorneys for Defendant Marcum LLP